UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MARTHA AGUIRRE and
JUAN ALFARO,

        Defendants.

15-CR-143

DECISION AND ORDER

On March 26, 2019, a jury convicted defendants Juan Alfaro and Martha Aguirre each on two counts: one count of conspiracy to possess with intent to distribute and to distribute a controlled substance, and one count of conspiracy to commit money laundering. Both defendants now have moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or a new trial under Federal Rule of Criminal Procedure 33. Docket Items 1052 and 1102. Both defendants attack the sufficiency of the evidence on their respective states of mind. *Id.*

Aguirre, for example, argues that "there is a paucity of evidence in the record that supports the element of scienter, which is an element in both of the relevant causes of action charged by indictment herein." *See* Docket Item 1102 at 4. According to Aguirre, the only trial witness linking her with the narcotics conspiracy "was Sonia Hernandez, who may have committed perjury on the witness stand." *Id.* Along the same lines, Aguirre argues that there was no evidence presented that she "had any knowledge that the monies being deposited" into bank accounts that she controlled "were the proceeds of drug trafficking." *Id.* at 5.

Alfaro's arguments parallel Aguirre's.  He claims that the only witnesses who tied him "to the alleged conspiracies and his knowledge and participation in same" were Hernandez and José Ruben Gil, two co-defendants who "had nothing to lose and a great deal to gain" by testifying against him.  *See* Docket Item 1052 at 4.  Alfaro asserts that "Mr. Gil's testimony was replete with inconsistencies and lies" and that Hernandez never linked Alfaro to controlled substances.  *Id.* at 5.  As a result, Alfaro argues, "the testimony failed to show that [he] knew that a controlled substance conspiracy existed and that deposits made into [his company] related to a controlled substance conspiracy." *Id.* at 6.  He therefore asks for judgment of acquittal or, in the alternative, a new trial in the interests of justice.  *Id.*

The arguments of both defendants are misplaced.  First, credibility issues such as those argued here are for the jury to decide.  And as both defendants implicitly concede in their motions, Gil and Hernandez offered incriminating evidence against them—evidence that the jury was entitled to, and evidently did, believe.  Second, the testimony of those two witnesses, while certainly incriminating, was not the only incriminating evidence presented at trial.

For example, an Internal Revenue Service agent testified about the flow of money through Alfaro's and Aguirre's bank accounts showing millions of dollars in deposits related to the Western New York sale of sea cucumbers, a product that another witness testified was virtually nonexistent in this area.  The money from those deposits was traced to withdrawals in California and transferred to other accounts in California and Mexico.  The government presented eyewitness testimony that cash related to drug proceeds was deposited in bank accounts traced to Alfaro and Aguirre.

In sum, neither defendant presents any reason to revisit the jury's verdicts. Both defendants' Rule 29 and Rule 33 motions are therefore denied.

## **DISCUSSION**

### A. Legal Standard

Convincing a court to set aside a jury verdict is no easy task. As the Supreme Court has noted, a jury's verdict will withstand a Rule 29 challenge as long as "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001). The Court views the evidence in the light most favorable to the government, *see United States v. Coté*, 544 F.3d 88, 98 (2d Cir. 2008), and draws all inferences in the government's favor. *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir. 1991). And the court may not substitute its own judgment on credibility or the weight of the evidence for what the jury decided. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000).

A defendant seeking a new trial under Rule 33 faces a lesser burden, but still a substantial one. The court may weigh the evidence and the credibility of witnesses, but it still should not grant a new trial unless exceptional circumstances convince it that it would be manifestly unjust to let the verdict stand. *See United States v. Sanchez*, 969 F.2d 1409, 1413–14 (2d Cir. 1992).

B.  **Drug Conspiracy**

As Alfaro implicitly concedes, the testimony of José Ruben Gil linked him to the drug conspiracy.  Gil testified that he was one of the leaders of the drug conspiracy in Southern California, and he testified that he met with Alfaro and Herman Aguirre, another of the leaders, to discuss their operation.  According to Gil, he met six or seven times with Alfaro to discuss the drug business and depositing drug money in Alfaro's account.  In fact, Gil referred to Alfaro as "the boss of the money."

Other proof at trial demonstrated that drug proceeds from Western New York were deposited in business accounts for Alfaro's seafood restaurant and booked as sales of sea cucumbers.  In fact, Alfaro's business had invoices for thousands of pounds of sea cucumbers purportedly sold to a nonexistent seafood company in Western New York.  An executive from a Western New York supermarket chain familiar with the sale of seafood in Western New York testified that there is virtually no market for sea cucumbers in this area. Especially when combined with Gil's testimony, this evidence gave the jury more than enough reason to infer that Alfaro knew that he was dealing with drug proceeds.

The evidence linking Aguirre to the drug conspiracy was even stronger.  Like Alfaro, Aguirre had control over bank accounts through which the drug proceeds passed.  But unlike Alfaro, Aguirre actually participated in a cross-country drive and delivered kilograms of cocaine from Southern California to Western New York.  More specifically, Hernandez testified that she and Aguirre drove a car that Aguirre rented in Southern California to Buffalo and flew back to Southern California the morning after their three-day trip was complete.  As they traveled, Aguirre and Hernandez repeatedly updated Aguirre's brother—Herman Aguirre, then the leader of the drug conspiracy in

4

Southern California. Co-defendant Maulana Lucas testified that he met one of the women in a hotel parking lot and eventually removed kilograms of cocaine from the car that they had driven from Southern California.[1]

The evidence also established that like Alfaro, Aguirre controlled a bank account into which drug proceeds were deposited. In fact, millions of dollars in "sea cucumber sales" passed through Aguirre's business account. Some of the sea cucumber sales were to the same nonexistent company in Western New York to which Alfaro had reportedly sold sea cucumbers. And again, as the supermarket executive testified, there is no market for sea cucumbers in Western New York.

The three-day cross-country trip tied Aguirre directly to the drug conspiracy. And the financial records were circumstantial proof of her involvement. All told, the jury had more than enough evidence to infer that Aguirre was well aware that she was involved in a drug conspiracy.

### C. Money Laundering

The proof of the defendants' involvement in money laundering was even more compelling. As noted above, the government introduced extensive financial records tracing drug proceeds into and out of accounts controlled by both defendants. Both defendants kept a small percentage of the money that passed through their accounts. Without a doubt, the defendants knew that they were dealing in illicit proceeds or turned

---

[1] *U.S. v. Andino*, 627 F.3d 41 (2d Cir. 2010), upon which Aguirre relied during oral argument, only supports the conclusion that the government's proof at trial established the element of scienter: "the government need not prove scienter as to drug type or quantity when a defendant personally and directly participates in a drug transaction underling a conspiracy charge." *Id.* at 47. Here, Aguirre's cross-country trip was direct participation.

a blind eye to what they were doing and consciously avoided learning the source of those proceeds. Again, there was more than enough evidence for the jury to infer that both defendants knew very well that they were involved in money laundering.

## **CONCLUSION**

Because a rational trier of fact could well have found each essential element of a drug conspiracy and a money laundering conspiracy as to both defendants, their Rule 29 motions are denied. *See Jackson v. Virginia*, 443 U.S. at 319. Moreover, this Court cannot say that the defendant's convictions were a miscarriage of justice or that their convictions must be set aside in the interests of justice. Therefore, their Rule 33 motions are denied as well. *See United States v. Sanchez*, 969 F.2d at 1413–1414.

SO ORDERED.

Dated: August 15, 2019
Buffalo, New York

    *s/ Lawrence J. Vilardo*
    LAWRENCE J. VILARDO
    UNITED STATES DISTRICT JUDGE